Marchman *vs.* Todd.

-No. 2.—WILLIAM R. MARCHMAN, plaintiff in error, *vs.* JULIUS C. TODD, defendant in error.

[1.] The Act of 1821, giving a summary remedy to recover the possession of personal property, is not confined to cases of fraud or violence, but extends to every other possession which has been obtained without the consent of the opposite party, or without authority of law.

[2.] Where the party complaining, shows that he was heretofore in the peaceable possession of the property, which is now found in the possession of the defendant, he has made out a *prima facie* case; and the burden is cast upon the defendant, to show that the change of possession has been by the consent of the plaintiff, or by operation of law.

[3.] Whether the plaintiff has or has not consented, is a question of fact, which must vary in each particular case; and may or may not be inferred, according to the circumstances which have been proven.

[4.] All issues under the Possessory Warrant Act, are mixed questions of law and of fact; and whenever the finding below, is against the principles of equity and justice, a new trial should be ordered.

[5.] In cases under the Act of 1821, which is a harsh Statute, and one in derogation of the Common Law, a time should be fixed for the trial, and the parties allowed a reasonable opportunity to procure their testimony.

[6.] The Superior Court, in hearing a *certiorari*, is restricted to the errors alledged to have been committed on the trial below ; and cannot award a re-hearing, on the ground of newly-discovered evidence since that trial.

[7.] Where a *certiorari* is granted, to review the proceedings of an Inferior

VOL. XV. 4

Judicatory, all the Magistrates who presided on the trial, should answer the *certiorari.*

[8.] All the material allegations in a *certiorari* ought to be fully answered, or assumed as true.

[9.] Does a *certiorari* lie to correct the decision of a Court convened to hear and determine cases, under the Act of 1821 ?    *Quere?*

*Certiorari,* from Troup Superior Court.    May Term, 1853.

For the facts of the case, and the questions made and decided in the Circuit Court, see the opinion delivered by the Supreme Court.

BENJ. HILL, for the plaintiff in error.

BULL, for the defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a proceeding under the Possessory Warrant Act of 1821.

Julius C. Todd, on the 9th day of October, 1851, made oath before Thomas J. Bacon, a Justice of the Inferior Court of Troup county, that he had recently been in the quiet, and legally and peaceably acquired possession of two negro girls, Amanda and Margaret, of the value of one thousand dollars; and that about the 20th day of August, of that year, said slaves were taken, carried away and disappeared, by fraud or some other means, from the possession of the deponent, and without his consent; and that he believed that said negroes had been received and taken possession of by William B. Marchman, of Troup county, under some pretended claim, and without lawful warrant or authority; and that deponent *bona fide* claimed a title to, or an interest in, the said negroes, and the possession thereof.

Whereupon, Mr. Justice Bacon, issued his warrant, directed to the Sheriff or his deputy, commanding him to apprehend Marchman, as well as seize the negroes and to have them be-

Marchman vs. Todd.

fore him or some other Justice of the Inferior Court of said county, to be dealt with as the law directs in such cases.

On the same day, Thomas Davis, as D. Sheriff, executed the warrant, by arresting the body of Marchman, and seizing the two negroes, and bringing them before 'Squire Bacon, and two of his associate Justices, Samuel Reed and William F. Fannin, who passed the following order in the premises : " upon a hearing and investigation of the testimony, it is ordered, considered and adjudged by the Court, that the defendant, William R. Marchman, deliver up the negroes named in the warrant, to Julius C. Todd, and that the Sheriff place them in his possession, upon his giving bond and security, as required by the Statute, in such cases made and provided ; and that the defendant pay the cost of the suit".

Marchman applied to Judge HILL for a writ of *certiorari* against said proceeding, who directed the same to issue.

In his petition for *certiorari*, Marchman states, among other things, that the Justices, on the trial, proceeded without asking or requiring him to say, whether or not he was ready to hear testimony from the plaintiff, and to investigate the issue. And that he, by his counsel, several times during the progress of the case, notified the Court that he had not announced himself ready. He alleged that he had not time to summon his witnesses and prepare for the trial ; that, nevertheless, the case was forced to a hearing. He states, that the testimony was about this : that Todd proved by Blount C. Ferrell and Thomas Price, that they had, at different times, previous to the 20th of August, seen two negro girls in the possession of Todd, resembling those then before the Court ; and that they had not seen them there since that time. Witnesses knew not how they came there, nor to whom they belonged. Todd proved by Thomas Davis, the arresting officer, that he found the negroes in possession of defendant, on the day he made the arrest. Todd here closed his case, when Marchman, by his counsel, moved the Court to dismiss the warrant, on the ground that Todd had made out no such case as was authorized by the Act of 1821, inasmuch as he had not shown that the ne-

groes were either violently or fraudulently taken or enticed away from his possession, or in any other manner without his, consent.

The Court refused the motion.

Marchman then applied to the Court, to continue the case or suspend the trial, until he could procure testimony by which he could prove the consent of Todd, to defendant's possession of the negroes, and his acknowledgment of defendant's right to the same.

This application was over-ruled by the Court.

Defendant then tendered in evidence, a deed made by him to his deceased daughter, formerly the wife of Todd, to the negroes in dispute, of which the following is a copy :

" GEORGIA, TROUP COUNTY :

"Know all men by these presents, that I, William R. Marchman, of the county and State aforesaid, for, and in consideration of the natural love and affection which I bear toward my beloved daughter, Martha J. Todd, wife of Julius C. Todd, of the county of Troup, and State aforesaid, formerly Martha J. Marchman, have this day given, granted, and conveyed, and by these presents, do give, grant and convey unto the said Julius C. Todd, in trust, to and for the sole and separate use and benefit of her, the said Martha J. Todd, wife of the said Julius C. Todd, and daughter of myself, as aforesaid, two negroes, to wit: one, a girl, by the name of Amanda, about fourteen years of age, dark complexion, now in the possession of him, the said Julius C. Todd; and a negro girl, about eleven years of age, of bright complexion, by the name of Margaret, and their future increase, under the following limitation and restrictions : that is to say, the said negroes and their future increase, are to be the sole and separate property of the said Martha J. Todd, during her natural life, independent of the control of her said husband, and not subject to his debts now, or hereafter to be created, and at her death, to be equally divided amongst her children or their representatives then living, share and share alike; and if she shall have no

lawful children at her death, to be divided between her brothers and sisters, share and share alike; and to be controlled and managed by her said husband, only for the use and trust aforesaid.

"In witness whereof, I have hereunto set my hand and affixed my seal, the day and year of our Lord, to-wit: the twenty-eighth (28th) day of December, eighteen hundred and fifty.

　　　　　　　　　"W. R. MARCHMAN, [L. S.]

Signed, sealed and delivered in presence of

　Test, DAVID B. TURNER,

　　　SAM. C. REED, J. I. C".

Defendant next proved the death of his daughter, without issue. And by Cicero Marchman, his son, that sometime after his sister's death, he, witness, by the direction of his father, sent to Todd, who lived in LaGrange, a negro boy and cart—the usual mode of transacting such business—to bring home Amanda and Margaret; that he came to town the same day himself, and met the cart and negroes in the streets, leaving with their plunder. It was about 10 o'clock in the forenoon. He saw and conversed with Todd, who made no objection whatever, to the removal of the negroes; in consequence of which, he supposed that all was right with him. He saw Todd again several weeks afterwards, when he invited witness to his room, and had a conversation with him. That he then seemed dissatisfied that the property had been settled on his wife, by her father; and said that he was not aware of the fact, until he examined and found the deed on record, the day the negroes were *sent back*. That had he known of it, he never would have received them at first; for that he would not give a dollar for property tied up in that way. Witness replied, that he was informed of it, before he married his sister; that it was his father's invariable habit with all his children; and hoped that he, Todd, would be satisfied, and all be friendly.

Defendant here closed his case, and moved to be discharged, which the Court refused to do; but awarded judgment for the plaintiff.

Marchman vs. Todd.

He then excepted to the judgment of the Court, upon the following grounds, to-wit:

1st. Because the Court erred, in permitting the case to proceed, without requiring the defendant to announce whether he was ready for trial or not; and after being notified by counsel, during the progress of the cause, that the defendant had not announced himself ready.

2d. Because the Court erred, in refusing the motion to dismiss the warrant, on the ground that it was not such a case as was authorized by the Act of 1821, and could not be sustained under that Act.

3d. Because the Court erred, in holding that the testimony of Todd was sufficient to bring the case within that Act; and sufficient in law, to sustain the proceeding under that Act.

4th. Because the Court, in deciding that under that Act and the warrant, plaintiff was not required to prove, either a violent or fraudulent taking or enticing away the negroes from the possession of the plaintiff or a disappearance from his possession, without his consent.

5th. Because the Court erred, in maintaining that the sending for and getting the negroes, in the manner shown, by the testimony of the defendant, was such a disappearance and taking possession of the negroes, as was prohibited by the Act of 1821.

6th. Because the Court erred, in presuming the possession of the defendant not peaceable.

7th. Because the Court erred, in not granting a continuance to the defendant, on the ground, that he had not announced himself ready, nor been called on to do so; and that the Court had been several times so notified; and that defendant could prove by Mr. Leary, whose testimony he had not been able to procure, by his arrest, that plaintiff did consent, and send the negroes to the defendant; and that consequently, his possession was not tortious, but peaceable.

8th. Because the Court erred, in not holding the case up a sufficient length of time, to enable defendant to obtain his proof.

All of the foregoing exceptions were duly presented in writing, and over-ruled by the Court.

Defendant further stated, in his petition for *certiorari*, that since the trial before the Justices, he has discovered that he can prove, by one James Leary, that Todd said to him, the day the negroes were sent for, that Marchman had sent for the negroes, and that he had returned them to him; and that he would have done this, even if the property had not been settled; and that he promised his wife, before her death, that there should be no difficulty about the property. Marchman asserts his belief as to the truth and materiality of this proof, and that he could and would have produced it on the trial, if sufficient time had been allowed him for that purpose.

Thomas J. Bacon and Samuel Reid, only two of the three Justices who presided at the hearing, answered the *certiorari*.

They state, that when the case was called, both sides, to the the best of their recollection, announced themselves ready. That Todd's counsel introduced and examined his witnesses; and that at the close of each examination, the witness was turned over to defendant's counsel, who replied that he had no questions to ask.

That when counsel closed for Todd, the attorneys of Marchman moved to dismiss the warrant, on the ground that the plaintiff had failed to make out a case, under the Act of 1821. The Court over-ruled the motion and proceeded to try the issue, according to their view of the Law, when the defendant's counsel arose and expressed surprise that the Court would decide the case before them, when defendant had never announced himself ready. The Court stated that they were under the impression that the defendant had announced. And, at any rate, as he had suffered them to remain under that belief long enough to hear a motion from their side, after the plaintiff had closed, they would arrest the case. That it certainly was their impression, at the time, that he had announced himself ready for trial. They may have been mistaken.

They admit it to be true, that application was made to postpone the final determination, to enable the defendant to pro-

cure testimony, to prove the consent of Todd to the removal of the negroes, and his acknowledgment of plaintiff's right to the same, which was refused by the Court.

It is admitted by the return, that the testimony given in on, the trial, as set forth in the petition for *certiorari,* is substantially correct.

At May Term, 1853, of the Superior Court, the case thus made was called for trial, when Marchman, by his counsel, moved the Court that William F. Fannin, one of the Justices of the Inferior Court presiding on the trial on said possessory warrant below, be required to answer the *certiorari*— which motion the Court over-ruled, the same having been answered by a majority of the Court.   It was next moved that the two Justices who had answered, be required to answer over, on the ground that the allegations in the *certiorari* had not been fully answered—the exception being taken without objection, *ore tenus,* before the Court.   The Court refused the application, on the ground that the answers and the allegations in the *certiorari* were substantially the same, and were therefore sufficient.

The plaintiff, in *certiorari,* by his counsel, informed the Court that Thomas J. Bacon, one of the Justices, was desirous of correcting a portion of his answer, to-wit: so as to read, that defendant's counsel arose and expressed himself surprised that the Court should proceed to decide the case, without permitting the defendant to introduce any testimony, after the plaintiff had closed, (the Justices having proceeded to the decision of the case, immediately after the plaintiff closed,) and that defendant did announce to the Court, during the progress of the plaintiff's testimony, that he had not announced himself ready; and thus, moved the Court that the correction be allowed to be made by the Justice.   The counsel for Todd agreed that the first part of the proposed correction be considered as made, and the Court ruled that the balance was immaterial, if made—and that the Court would over-rule the point made on the facts, admitting them to be true, if not appearing that the defendant had, at any time, made a motion to continue the case.

Marchman *vs.* Todd.

To all of which decisions, counsel for Marchman excepted.

The several grounds taken in the *certiorari*, were then argued—all of which were over-ruled; whereupon, counsel for Marchman excepted.

The Court further held, that a new trial could not be granted, on account of the newly-discovered evidence, since the trial in the Court below.

And to this decision, counsel for Marchman excepted.

The Court, on over-ruling the grounds taken in the *certiorari*, for a new trial, held that the burden of proving that the negroes were taken from the possession of Todd by fraud, violent or other means, without his consent, was not on Todd, as this would be requiring him to prove a negative—but that Marchman was bound to prove consent, Todd having shown possession in himself, and sanction of that possession by Marchman.

And to this ruling, counsel for Marchman excepted.

The Court further held, that though under all the facts. shown, the case was, in the opinion of the Court, with the plaintiff in *certiorari*, yet, the Court would liken the Justices below to a Jury, in deciding facts, and not disturb their verdict.

And to this opinion, Marchman, by his counsel, excepted.

[1.] Did the plaintiff, Todd, make out a case under the Act of 1821? It is insisted that he did not; that the Statute contemplates cases only, where possession has been obtained by fraud, violence or seduction. Such tortious possession may have been, and probably was, mainly in the eye of the Legislature, in providing this summary remedy. And some flagrant case, of this kind, had likely occurred, which induced the passage of the Law; but a simple perusal of the Act, is sufficient to show that it takes a much broader scope.

The preamble to the Act recites, that "WHEREAS a practice hath been followed by some persons, having or laying claims to negroes and other personal property, to take or convey away the same, by violence, seduction *or other means*, or to harbor or otherwise take or cause to be taken out of the possession of

the adverse claimant, *without due course of law*—and oftentimes to remove the same out of the State, to the great injury of the true owner; and whereas, manifest injustice and many serious mischiefs may arise from such a practice, which is productive of frauds, violence, and quarrels, and bloodshed" :

"*Be it enacted therefore*, That upon complaint, made on oath by the person injured, his agent or attorney, to any Judge of the Superior or Justice of the Inferior Court, or any Justice of the Peace, that any negro or negroes, or other personal chattel, have been taken, enticed or carried away by fraud, violence, seduction *or other means*, from the possession of such deponent, or that such negroes or other personal chattels, having been recently in the quiet and legally and peaceably acquired possession of such deponent, have absconded or disappeared, *without his or her consent*, and as he or she believes, have been harbored, received *or taken possession of*, by any person or persons, under some pretended claim or claims, *and without lawful warrant or authority;* and that the said deponent, or the person for whom he is agent or attorney, *bona fide*, claims a title to or interest in the said negroes or other chattels, or the possession thereof, it shall be the duty," &c.

Thus, it will be seen that Mr. Todd, if he did not have the fear of God before his eyes, and I by no means intimate that he did not, for I see no reason to doubt but that he is a strictly conscientious man, certainly did have the *Digest*, for he swears, as every man should, when he considers himself entitled to a Statutory remedy, in the very words of the Act.

It will be perceived, moreover, that the Law applies to every possession which has been acquired without the consent of the opposite party, or without authority of law. It affords a mode of redress, as to personal property, somewhat analagous to the Forcible Entry and Detainer or Forcible Detainer Act, in relation to real estate, except that the relief in the former case is more full and complete, than in the latter.

[2.] Was the evidence submitted by the plaintiff, sufficient to make out a *prima facie* case, under the Statute?

The proof established that Todd was in the possession of

the two slaves in August, 1851; that they were removed from his premises and found in the possession of Marchman. Here, then, is a *prima facie* case. As property is stolen—it is found in the possession of B. The burden is cast upon B, to account for or explain his possession. The *onus* was cast upon Marchman, in this case, to show the consent of Todd to this change of possession.

[3.] Did he do this? Our brother HILL thought that he did. At least, he held that the weight of the testimony was with Marchman. And so we think. It was proven that he sent his servant and ox-cart, in open day, to the house of Todd, in the town of LaGrange, for the negroes; that Todd was at home that day; that the negroes were seen passing along the streets, in the mode that such removals are usually conducted; that the negroes, themselves, stated that they were going back to old masters, not to return any more; that Todd did not complain to Marchman's son, with whom he kept company that day, that the negroes had been sent for or taken away; that three weeks afterwards, he remarked to Cicero Marchman, the brother of his deceased wife, that until the day the negroes left, he never knew of the deed of gift to his wife, which he found, upon the record, gave his wife a life-estate only, in the property, in the event of her dying without children, as she had done. We repeat, that his consent to the return of the negroes, not only might, but in our judgment, should have been inferred from this evidence.

[4.] Had the Superior Court the right to pass upon this proof? The Circuit Judge thought not. He analogized the decision of the Court below, upon the facts, to the verdict of a Jury, which he had no right to control. We apprehend this is a mistake. All issues, under the Act of 1821, are mixed questions of law and of fact. And the Magistrate before whom they are tried, renders his judgment upon both. When the case is brought up, therefore, upon a writ of *certiorari*, for review, it opens the whole question. And the dernier tribunal must pass upon both. We esteem this an important principle in cases of *certiorari* from all Inferior Judications; and one which must

not be relinquished, nor its application abridged. And whenever the finding below, is against the principles of justice and equity, a new trial should be granted.

[5.] Ought a continuance to have been allowed the defendant?

I would remark that this is a harsh proceeding; it is in derogation of Common Law. It is not entitled, therefore, to a very indulgent interpretation. What does this record disclose? That on the 9th of October, 1851, that the affidavit was made, the warrant issued and served, Marchman and the negroes brought before the Magistrates, and he put instantly upon his trial! In a few short hours this proceeding was consummated, and two valuable slaves, sworn to be worth one thousand dollars, transferred from the possession of one citizen, where they had remained for months, without complaint, to that of another! This may well be called a *summary* proceeding! The defendant, by his counsel, stated to the Court, several times, that he had not been called on to announce himself ready ; and during the progress of the trial, begged for time to produce proof of the consent of the plaintiff, that he should take back the negroes, which was refused. This privilege should have been granted. The ends of justice required it. In cases under this Statute, parties should always be allowed a reasonable opportunity to bring forward their proof. And a time should be fixed—one or two days, or a longer or shorter period, as circumstances may require.

[6.] In the petition for *certiorari*, Marchman swears that since the trial before the Justices, he has discovered new testimony, which would prove that Todd had consented to return these slaves. Ought the Circuit Court to have considered this ground in acting upon the *certiorari?* The inclination of our mind is, that he could not; that his power extended only to the correction of the errors on the trial below. The question has been mooted, whether the special tribunal, summoned for the trial of this cause, could have entertained a motion for a new trial, to correct its own errors? It is clear, and such have been the adjudications of this Court, that where an appeal lies

Marchman *vs.* Todd.

from one Court to another, the Inferior Judicatory has no power to grant a new trial; for an appeal is a new trial. But does the same rule obtain, where the decision in the inferior tribunal is final? It is a question worthy of examination, perhaps, but one which need not be decided now.

There are several assignments of error, which we have not directly noticed, namely: the refusal of the Court to require Mr. Fannin, one of the Justices who presided on the trial, to answer the *certiorari*. Also, in over-ruling the motion requiring the two Justices who did answer, to answer over.

[7.] In cases like this, all the Magistrates who presided on the trial below, should answer the *certiorari*. It is not a mere transcript of the record that is sent up; but like a bill of exceptions in this Court, the *certiorari* and return, are intended to supply those facts which do not appear of record. Some of these might be remembered by some of the Magistrates, which are not recollected by the rest.

(8.) If the answers filed are not full, they should be made so. Here the Court refused to direct a further return, for the reason that that already made, corresponded, substantially, with the statements in the petition for *certiorari*. And this was right. The allegations in the *certiorari* ought either to be fully answered or assumed as true, for the purposes of the decision.

[9.] It has been argued, that a *certiorari* does not lie in this case. Whether it does or does not, has not been adjudged in the Superior Court, and cannot be, therefore, in this Court. It may well be questioned, whether the Legislature has made suitable provision for carrying into effect the grant of power in the Constitution to the Superior Courts, to correct errors by *certiorari*, in all Inferior Courts. In cases originating in the Inferior and Justice's Courts, and all others, where the office is permanent, there is no difficulty; but suppose Mr. Justice Bacon, who issued this warrant, had presided alone, as he might have done—perhaps, under the Act, ought to have done—upon the trial, and had since died, (may his life be long preserved!) to whom would the remittitur have been sent back? The in-

cumbent on the Inferior Court, who was elected to fill his vacancy, or one of the surviving members of that Court, and which?   And why to any of these, more than to any other Magistrate, who might originally have issued the warrant? Suppose the three Justices, who actually presided, have since been superseded or resigned, or their commission has been vacated by resignation or otherwise, who will take charge of this case, when it goes back?   True, it so happened that a majority of the Inferior Court, proper, did hear and determine this case, but that was accidental merely, and did not constitute that tribunal the Inferior Court.   Our brother Bacon merely called in his two colleagues as convenient helps—he could have acted without them.

Suppose a Judge of the Superior Court acted, as he might do, would a *certiorari* lie from himself to himself, to correct his own errors?   Suppose he should take it into his head to disregard the mandate emanating from himself, and refuse to respond to the *certiorari*—what then?   Besides, was it ever intended that six month's delay should intervene in applying for a *certiorari*, in such a summary proceeding as this?   Would it not virtually annul the very object for which the Statute was passed?   Better resort to trover at once.

Our astute brother HILL has asked for a reversal, and it is ordered, upon the grounds indicated in this opinion, and we leave it to him to pursue his remedy, hoping that he may not meet with as much difficulty in finding a Court to try his case, as did Mr. Stephens the Government in South America, to which he was accredited by the President. who, after overtaking a Military Chieftan, whom he had been chasing for months, wrote home that he was at a loss whether to return on his commission, *cepi corpus*, or *non est inventus.*